IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FRED REED,                          )
                                    )
            Plaintiff,              )
                                    )
     v.                             )
                                    ) Civil Action No. 09-126J
MICHAEL J. ASTRUE,                  )
COMMISSIONER OF                     )
SOCIAL SECURITY,                    )
                                    )
            Defendant.              )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 23rd day of September, 2010, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 11) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 9) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry

differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Moreover, it is well settled that disability is not determined merely by the presence of impairments, but by the effect that those impairments have upon an individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed his application for DIB[1] on March 28, 2005, alleging a disability onset date of July 10, 2004, due to blindness in his right eye. Subsequently, he also alleged disability due to a foot impairment. Plaintiff's application was denied initially and upon reconsideration. At plaintiff's request, an ALJ held a hearing on April 17, 2008, at which plaintiff, along with a vocational expert, appeared and testified. On May 13, 2008, the ALJ issued a decision finding that plaintiff is not disabled. The Appeals Council denied plaintiff's request for review on October 31, 2008, making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 57 years old at the time of the ALJ's decision and is classified as a person of advanced age under the regulations. 20 C.F.R. §404.1563(e). Plaintiff has at least a

---

[1] The ALJ found that plaintiff met the disability insured status requirements of the Act on his alleged onset date and had acquired sufficient coverage to remain insured through December 31, 2009.

high school education. He has past relevant work experience as a truck driver, but he has not engaged in substantial gainful activity since his alleged onset date.[2]

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. Although the ALJ determined that plaintiff's foot problems are not severe impairments, he did find that plaintiff suffers from the severe impairment of right eye blindness due to trauma-induced macular scar. However, the ALJ found that plaintiff's eye impairment does not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4, Appendix 1.

The ALJ further found that plaintiff retains the residual functional capacity to engage in work at all exertional levels but with certain non-exertional restrictions arising from his eye impairment. (R. 21). Taking into account these limiting effects, a vocational expert identified numerous categories of jobs which plaintiff can perform based upon his age, education, work experience and residual functional capacity, including box bender and hospital cleaner. Relying on the vocational expert's testimony, the ALJ found that although plaintiff cannot perform

---

[2] The record shows that plaintiff worked a part-time job as a loss prevention officer for Sears Department Stores between December of 2006 and the time of the hearing but did not earn sufficient income from that activity for it to be considered substantial gainful employment.

his past relevant work of truck driver, he is capable of making an adjustment to work which exists in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §423(d)(2)(A).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[3] 20 C.F.R. §404.1520; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S. Ct. 376 (2003).

---

[3] The ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §404.1520. See also Newell, 347 F.3d at 545-46.

Here, plaintiff contends that the ALJ erred at step 2, by finding that plaintiff's foot impairment was not severe, and at step 5, by finding that plaintiff retains the residual functional capacity to perform work at all exertional levels with only non-exertional limitations. More specifically, plaintiff contends that: (1) the ALJ improperly evaluated the medical evidence by rejecting the opinions of plaintiff's two treating podiatrists; (2) the ALJ improperly evaluated plaintiff's credibility by failing to consider plaintiff's long work history; and, (3) the ALJ improperly relied on the vocational expert's response to a defective hypothetical that failed to account for limitations arising from plaintiff's foot impairment. Upon review, the court is satisfied that the ALJ properly evaluated the evidence and that all of his findings are supported by substantial evidence.

Plaintiff first challenges the ALJ's step 2 finding that his foot problems are not severe impairments. At step two, the ALJ must determine whether a claimant's impairments are severe as defined by the Act. 20 C.F.R. §404.1520. "[An] impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §404.1521(a). The step two inquiry is a *de minimus* screening device and, if the evidence presents more than a slight abnormality, the step two requirement of severity is met and the sequential evaluation process should continue. Newell, 347 F.3d at 546.

Although "[r]easonable doubts on severity are to be resolved in favor of the claimant," Newell, 347 F.3d at 547, the ALJ concluded in this case that plaintiff's alleged foot problems "have no more than a minimal impact upon [plaintiff's] ability to engage in work-related activities," (R. 20), and, therefore, are not severe impairments. After discussing the medical and other evidence, the ALJ aptly summarized the basis for his finding in his decision, noting in particular plaintiff's failure to mention any foot problems, despite the fact that he had alleged they were of long-standing duration, until well over a year after he filed for benefits,[4] as well as plaintiff's conservative course of medical treatment relating to his feet, and plaintiff's "fairly active range of daily activities." (R. 20).

Plaintiff, however, contends that the ALJ erred at step 2 by rejecting the opinions of two treating podiatrists, Dr. Sims and Dr. Gelsomino, who suggested that plaintiff's foot problems limit

---

[4] The ALJ noted that plaintiff failed to mention any problems with his feet in his initial application for benefits, in a face-to-face interview when he applied for benefits, or in five of the six disability reports submitted in support of his application. (R. 20). Plaintiff's application sought disability benefits solely for vision difficulties. In a report submitted the same day as plaintiff's application, the interviewer recorded no observed or perceived difficulties in standing or walking. (R. 73-76). In a subsequent undated report, plaintiff listed only an eye injury as the reason he could not work, (R. 78), and in three subsequent reports he indicated that there were no new illnesses, injuries or conditions which would prevent him from working. (R. 84; 91-93; 95). Even in the last report which he submitted in which he reported for the first time that he "cannot be standing long because [of] my feet problems," plaintiff also indicated that there were no new conditions which would preclude him from working. (R. 101).

his ability to stand and walk. The court has reviewed the ALJ's decision and the medical evidence of record and is convinced that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

Under the Social Security Regulations and the law of this circuit, opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §404.1527(d)(2); <u>Fargnoli</u>, 247 F.3d at 33. Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. <u>Id</u>. When a treating source's opinion is not entitled to controlling weight, it is evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors including the opinion's supportability, consistency and specialization. 20 C.F.R. §405.1527(d). In addition, the opinion of a physician, treating or otherwise, on the ultimate determination of disability never is entitled to special significance. 20 C.F.R. §405.1527(e); SSR 96-5p.

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence and the court finds no error in the ALJ's conclusions. The ALJ expressly addressed the opinions of Dr. Sims and Dr. Gelsomino in his decision and adequately explained his reasoning for giving those opinions only minimal weight. (R. 20).

The ALJ discussed both the April 11, 2008, handwritten report of Dr. Sims[5], in which she summarily stated "please limit ambulation as needed -unable to put pressure on right foot as of April 10, 2008,"[6] (R. 142), and the April 29, 2008, letter report of Dr. Gelsomino, in which he suggested that plaintiff "do little, if any walking" and that plaintiff "is not able to be on his feet for more than five or ten minutes at a time," and further recommended that plaintiff "not ambulate at all." (R. 183). The ALJ noted that both of those opinions were offered over a year after plaintiff last was treated by Dr. Sims and Dr. Gelsomino, respectively, and that neither "are supported by any other medical evidence of record, by [plaintiff's] very conservative course of medical treatment in connection with his feet since at least his alleged onset date of disability, or by [plaintiff's] activities of daily living." (R. 20).

The court finds no error with the ALJ's analysis. As noted in the decision, neither of those opinions was supported by any sort of objective evidence whatsoever. In fact, the only medical evidence in the record relating to plaintiff's feet was a three-page "Report of Operation" detailing surgery performed by Dr. Sims on plaintiff's right foot in 1992 (R. 127-129), twelve years prior

---

[5] The ALJ incorrectly attributed this report to Dr. Gelsomino in his decision, to whom, incidentally, the ALJ also improperly referred throughout his opinion as "Dr. Gelosimo."

[6] The court also notes that this handwritten report is on a form entitled "Disability Certificate" and that it also contains a handwritten note at the bottom that states "for work, not for SSI." (R. 142).

to plaintiff's alleged onset date, and two-pages of "progress notes" from Dr. Sims listing a series of, presumably, appointment dates between April 10, 2003, and August 9, 2005, each date followed only by one line of indecipherable, apparently identical, handwritten notations. (R. 130-31).

There simply is no objective medical evidence in the record whatsoever to support the opinions of Dr. Sims and Dr. Gelsomino that plaintiff is limited in his ability to stand or walk, or in any other way, because of his feet. Although Dr. Gelsomino refers in his letter to at least three office visits between March 5, 2007, and April 24, 2008, there are no office notes in the record from these visits. Although he states that plaintiff has undergone "a number of foot surgeries performed on both feet," the record contains an operation report from only one operation in 1992. Finally, although Dr. Gelsomino makes reference to "lateral radiographs" of plaintiff's feet, there are no radiographs in the record. Likewise, there are no office notes from Dr. Sims discussing the appointments alluded to in her "progress notes." In fact, there are no x-ray results, MRI results, results of physical examinations or any other objective findings at all supporting any limitations in plaintiff's ability to stand or walk.

The ALJ did a thorough job in addressing the relevant medical evidence and explaining why he gave minimal weight to the opinions of Dr. Sims and Dr. Gelsomino. (R. 20). Because those opinions are inconsistent with other substantial evidence in the record,

including the lack of objective medical findings and plaintiff's own daily activities, those opinions are not entitled to controlling weight.

Plaintiff also contends that the ALJ's step 2 finding is flawed because in assessing plaintiff's credibility the ALJ failed to consider plaintiff's long and excellent work history. Plaintiff argues that as a claimant with a 38-year long work history he is entitled to enhanced credibility concerning his allegations of disabling pain. Upon review, the court is satisfied that the ALJ properly evaluated plaintiff's credibility in accordance with the regulations.

A claimant's subjective complaints concerning his impairments must be supported by objective medical and other evidence. 20 C.F.R. §404.1529(c); Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). An ALJ may reject the claimant's subjective testimony if he does not find it credible so long as he explains why he is rejecting the testimony. Schaudeck v. Commissioner of Social Security, 181 F.3d 429, 433 (3d Cir. 1999).

Here, the ALJ found that the record establishes no impairment that reasonably could account for plaintiff's subjective allegations in connection with his feet. (R. 21). The ALJ adequately explained the basis for his credibility determination in his decision, (R. 20), and it is clear that the ALJ adhered to the applicable regulations and rulings in assessing plaintiff's credibility and properly considered all of the relevant evidence in the record, including the medical evidence, plaintiff's

activities of daily living and the lack of pain medication or significant treatment for foot pain, as well as plaintiff's own statements about his symptoms and how they affect him. See 20 C.F.R. §§404.1529(c)(1)-(3); Social Security Ruling 96-7p.

The court is satisfied that the ALJ's credibility determination is supported by substantial evidence. In fact, there is ample evidence, as outlined by the ALJ in his decision, supporting an adverse credibility finding in regard to plaintiff's allegations of foot limitations. Specifically, the ALJ noted plaintiff's failure to mention any foot impairment until late in the administrative process, the lack of frequent treatment, the lack of objective evidence and plaintiff's active range of daily activities, which include part-time work as a loss prevention officer at Sears.[7] (R. 20). The ALJ further noted the fact that although plaintiff appeared at the hearing using a cane to ambulate and testified that the cane had been prescribed, there is no medical report or evidence in the record actually prescribing a cane, and no reference to the need for a cane was set forth in the reports submitted either by Dr. Sims or Dr. Gelsomino. (R. 20). In fact, Dr. Gelsomino stated in his report that plaintiff "wears good orthopedic shoes with good support so he can ambulate." (R. 183).

---

[7] The court notes that plaintiff testified that he works at Sears usually 12-14 hours per week depending on "how much I'm needed." (R. 190). His duties include interrogating shoplifters, assisting others in what to put into reports and, if necessary, testifying in court. (R. 190-191).

Plaintiff's contention that the ALJ's credibility determination is flawed because he failed to consider plaintiff's long work history also is unpersuasive. Plaintiff is correct that the testimony of a claimant with a long, productive work history is to be given substantial credibility concerning his work-related limitations, but only when those limitations are supported by competent medical evidence. See Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979). And although a claimant's work history is one of many factors the ALJ is to consider in assessing an individual's subjective complaints, 20 C.F.R. §404.1529(c)(3), the ALJ is not required to equate a long work history with credibility. See Christl v. Astrue, 2008 WL 4425817, *12 (W.D.Pa. Sept. 30, 2008).

Thus, a claimant's work history alone is not dispositive of credibility. Here, plaintiff testified about his lengthy work history at the hearing, (R. 193; 202), and the ALJ referred to it when he determined that plaintiff could not perform his past relevant work as a tractor trailer driver. (R. 22). However, in assessing plaintiff's credibility the ALJ considered the record as a whole, and, based on his review of all of the evidence, properly concluded that there is no competent medical evidence establishing any impairment that reasonably could account for plaintiff's subjective allegations of limitations in connection with his feet. (R. 21). Accordingly, plaintiff's work history in and of itself is insufficient to overcome the substantial evidence refuting plaintiff's allegations of debilitating foot limitations.

AO 72
(Rev. 8/82)

Plaintiff also challenges the ALJ's finding of not disabled at step 5 by arguing that the ALJ's residual functional capacity finding fails to account for plaintiff's "severe" foot impairment and resulting difficulty in standing and walking, and that the ALJ thereafter erroneously relied upon the vocational expert's response to a hypothetical which was based on that residual functional capacity finding and which did not accurately set forth all of plaintiff's work-related limitations.

An ALJ is not required to submit to the vocational expert *every* impairment alleged by a plaintiff; rather, the hypothetical posed to the vocational expert must reflect all of the claimant's impairments and limitations supported by the record. <u>Johnson v. Commissioner of Social Security</u>, 529 F.3d 198, 206 (3d. Cir. 2008). Here, the ALJ's residual functional capacity finding and hypothetical question to the vocational expert in fact did account for all of plaintiff's impairments and limitations <u>supported by the record</u>, and the ALJ did not err in rejecting any additional limitations relating to plaintiff's ability to walk and stand as such limitations, as already discussed above, are not supported by the record as a whole. The court is satisfied that the ALJ's residual functional capacity finding, and the ALJ's hypothetical to the vocational expert based on that finding, sufficiently account for all of plaintiff's limitations supported by the record.[8]

---

[8] Plaintiff also argues that he is disabled as a matter of law under grid Rule 201.06. While it is true that an individual

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

                                               /s/ Gustave Diamond
                                               Gustave Diamond
                                               United States District Judge

cc:   Karl E. Osterhout, Esq.
       1789 S. Braddock Avenue
       Suite 570
       Pittsburgh, PA 15218

       Stephanie L. Haines
       Assistant U.S. Attorney
       319 Washington Street
       Room 224, Penn Traffic Building
       Johnstown, PA 15901

---

of plaintiff's age, education and work experience with a residual functional capacity for <u>sedentary</u> work would be disabled as a matter of law under grid rule 201.16, the court is satisfied that the ALJ's residual functional capacity finding that plaintiff can perform work at all exertional levels with certain non-exertional limitations is supported by substantial evidence  Accordingly, grid Rule 201.16 is inapplicable.